UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
FILE NO.: **7:18-cv-5-D**

Christopher W. **LIVINGSTON**,　　)
　　　*Plaintiff*　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　**PLAINTIFF'S OPPOSITION TO**
　　v.　　　　　　　　　　　　　)　　**DEFENDANT BETTIS' (DE20-21)**
　　　　　　　　　　　　　　　　)　　**FED.R.CIV.P. 12 MOTION TO DISMISS**
The **NC STATE BAR**, et al.,　　　)
　　　*Defendants*　　　　　　　)
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿/

　　　Plaintiff Christopher W. Livingston opposes Defendant Bettis' Motions to Dismiss and

Memoranda in Support and requests that they be denied in all respects, on the following grounds

(herein, "R[number] designates pages of the Record on Appeal in *NCSB v. Livingston*, which may

be downloaded by going to the NC Appellate Division's Electronic Filing Site and searching file

number 17-277]; T[number] designates transcript pages from the 15 DHC 15 evidentiary hearing;

¶[number] refers to paragraphs of the Amended Complaint):

### General principles of preanswer motions

　　　To state a claim for which relief may be granted at law, and to obtain discovery of evidence

likely to prove its averments, the Amended Complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In

reviewing a 12(b)(6) dismissal, we construe factual allegations in the nonmoving party's favor,

treating them as true, and we will affirm a dismissal for failure to state a claim only if it appears

that the plaintiffs would not be entitled to relief under any facts which could be proved in support

of their claim." *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999) (internal quotation marks

omitted). *See also Elliott v. American States Ins. Co.*, __ F.3d __ (4th Cir. 2018) (slip op. at 17).

Plaintiff may have inartfully stated the exact constitutional basis for his claims, and will likely

1

move to amend to cure any labeling defects, but this is not dispositive. For all litigants, Fed.R.Civ.P. 8(e) commands: "Pleadings must be construed so as to do justice."

No principle of complaint construction is firmer than that "under the liberal rules of federal pleading, the label of a claim is not dispositive. *See Alexander v. Unification Church of America*, 634 F.2d 673, 678 (2d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). The issue is whether a plaintiff has alleged sufficient facts to state a claim. Given that it is often difficult to know which legal theory will be supported by the facts developed during discovery, a plaintiff should be given some latitude so that a valid claim is not prejudiced by counsel who puts the wrong legal label on a claim. *Cf. Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995)." *Aquilone v. Republic Nat'l Bank*, No. 98 Civ. 5451, 1998 WL 872425 (S.D.N.Y. 1998). Here, counsel and client are identical, if for no other reason than that no sane lawyer would take Plaintiff's case after seeing what happens to North Carolina lawyers when they sue NCSB.

## This Court has subject matter jurisdiction

Even if Bettis escape on 12(b)(6) grounds, his 12(b)(1) jurisdictional challenges, *see* DE21 at 3, are misplaced. "While the court erroneously concluded that it lacked jurisdiction over Wiggins' entire complaint, we conclude that the allegations in Wiggins' complaint were insufficient to meet the requirements of pleading an unconstitutional conspiracy claim." *Wiggins v. 11 Kew Garden Court*, 497 Fed.Appx. 262, 263 (4th Cir. 2012) (unpublished) (further noting that 28 U.S.C. § 1331 confers district court jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States.")

Curiously, *see* DE26 at 4, Bettis argues against liability under respondeat superior and municipality theories, even though Plaintiff did not plead them and even though neither municipal

liability nor municipal immunity can apply to Bettis, since he is sued only as an individual and not in his former capacity as Mayor of New Bern. This is no basis for dismissal.

### Misuse of NCSB disciplinary process is "under color of state law"

Pleadings need not contain this magic phrase. It is plain from the string of actions beginning with (and probably before) Bettis' February 2009 request and receipt of a 1.2-hour private audience at NCSB (a privilege denied to lesser mortals such as Plaintiff and his family when NCSB-favored lawyers such as Mona Lisa Wallace defame, bully, and frivolously sue them, ¶¶154-225), for which he billed his clients, ¶¶306-07, and continuing through dozens of falsehoods that NCSB swallowed without question, ¶¶393-426 (including possible projection of Bettis' own criminal and violent tendencies onto Plaintiff, ¶427), Bettis went far beyond "see something, say something" and gained the use of NCSB enforcement mechanisms as his own. He then used it toward his own ends, principally harassment of Plaintiff and distraction of NCSB from Bettis' own misconduct. Emboldened by NCSB's conferral of absolute immunity from any discipline for anything, even impaired driving that endangered his own stepchildren's lives and still more violence against women, ¶¶428-35, Bettis continues to violate all the RRPCs he wants to, including apparently advising his supposedly former client Phil Manger that the $89,400 federal judgment against him is invalid and need not be paid. ¶438-52.

Bettis cites *Perry v. Pamlico County*, 88 F.Supp.3d 518, 537 (E.D.N.C. 2015) as the source of the "committed by a person acting under color of state law" element of a 42 U.S.C. § 1983 claim. In fact, this phrase originates in the statutory text ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..."), and *West v. Atkins*, 487 U.S. 42 (1988) holds it applicable to private citizens whose entanglement with the State is of sufficient quality to render them indistinguishable therefrom for § 1983 purposes. A prison doctor, even a

contractor, under North Carolina law and policy is part of "a joint effort of correctional administrators and health care providers," 487 U.S. at 51 (quoting the state prison health care manual). Furthermore and in general: "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 320 (1981)). The defendant thus became a state actor as one of "only those physicians authorized by the State to whom the inmate may turn." *West*, 487 U.S. at 55.

These facts are stronger than even Bettis' cozy relationship with NCSB, but Bettis' voluntary use of NCSB as his private police force, secure in the knowledge that NCSB would never prosecute *him* for *his* professional misconduct that widely exceeded Plaintiff's, makes him a state actor for purposes of the instant case. Without Bettis' numerous and persistent hyperbole and flat-out falsehoods, NCSB would never have prosecuted Plaintiff.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. ... Our approach to this latter question begins by identifying 'the specific conduct of which the plaintiff complains.' *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 51 (1999). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). "We have recognized that there is 'no specific formula' for determining whether state action is present. *Hicks v. S. Md. Health Sys. Agency*, 737 F.2d 399, 402 n. 3 (4th Cir. 1984) (internal quotation marks omitted). 'What is fairly attributable [to the state] is a matter of normative judgment, and the

criteria lack rigid simplicity.' *Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). While a variety of factors may bear upon the inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the 'totality of the circumstances.' *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000); *see also Mentavlos v. Anderson*, 249 F.3d 301, 311-12 (4th Cir. 2001) (cataloging various approaches to determining state action.)" *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006). *Mentavlos*, 249 F.3d at 313, notes: "Although 'cases deciding when private action might be deemed that of the state have not been a model of consistency,' *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 378 (1995), ... 'the Supreme Court ha[s] held that a private party may be deemed a state actor for purposes of § 1983 liability ... when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.' *Andrews v. Federal Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993)."

Here, Bettis used the disciplinary apparatus as just another litigation tool, even though standard rules and procedures in the CCDN litigation provided Bettis with a wide range of countermeasures against Plaintiff and Plaintiff's clients, some of which worked (motions to dismiss the Bladen County cases, years of delay of *Southwood* in this Court by asserting meritless defenses) and some of which did not (attempted sanctions against Plaintiff, attempts to dismiss the most serious charges in *Southwood*). Bettis knew that his own conduct violated any number of professional conduct standards, and to distract attention from this, harried NCSB for years with one untruth after another about Plaintiff, until he got what he really wanted—destruction of Plaintiff's legal career and immunity from the rightful consequences of his own professional misconduct. "When the private individual invokes the aid of the State, however, the state must act within the confines of the Constitution." *Andrews*, 998 F.2d at 219. Bettis' victorious campaign

for Plaintiff's selective personal destruction therefore "may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). Those who use the might of the State as their own must also accept the responsibility of constitutional compliance.

Neither may Bettis raise a time bar. "In order to establish a claim for selective prosecution, Plaintiff must allege that ... the plaintiff suffered an injury that was caused by the discriminatory treatment." *Hyatt v. Town of Lake Lure*, 225 F.Supp.2d 647, 660 (W.D.N.C. 2002) (citations omitted). Plaintiff suffered no injury until NCSB commenced 15 DHC 15 on 13 April 2015; thereupon, and not before, did Plaintiff's cause of action accrue. Plaintiff added Bettis as a Defendant in the instant action on 12 April 2018, less than three years later. *See* NCGS § 1-52(5) ("Within three years an action-- ... for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated."); *Perry*, 88 F.Supp.3d at 529.

Last, and perhaps least, Bettis invokes res judicata based on the results of (even though he does not take the effort to cite it properly) *Taylor v. Bettis*, 976 F.Supp.2d 721 (E.D.N.C. 2013), *aff'd*, 693 Fed.Appx. 190 (4th Cir. 2017). This is without merit. "The essential elements of res judicata are: (1) a final judgment on the merits of an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 135, 337 S.E.2d 477, 482 (1985), quoting *Hogan v. Cone Mills Corp.*, 63 N.C. App. 439, 442, 305 S.E.2d 213, 215 (1983), which in turn was quoting *Nash County Board of Education v. Biltmore*, 640 F.2d 484, 486 (4th Cir.1981). Unless Plaintiff is somehow considered in privity to his clients in *Taylor*, Bettis lacks element (3). Definitely absent is element (2), since *Taylor* sought damages for racketeering and conversion, while this is a claim for constitutional violations that accrued long after *Taylor* became final.

6

Any issues that Bettis did not raise, *e.g.*, he did not deny that his own actions constituted serious and professional misconduct and did not argue that NCSB/Hodge/Silverstein's actions were legal, are waived and Plaintiff need not, indeed cannot, address them.

Stating a claim does not, of course, mean that Plaintiff automatically wins the case, only that Plaintiff will now have a chance to prove it. This, however, will not be a problem, since NCSB's vastly disparate treatment of the equally situated Plaintiff and Bettis, when both should have been prosecuted if either was, is prima facie evidence of some under-the-table deal between them. Neither Bettis nor his protectors have so far denied this.

WHEREFORE Plaintiff requests that Bettis' Motion be denied in all respects, or in the alternative that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

/s/Christopher W. Livingston
Christopher W. Livingston, Plaintiff Pro Se, NCBN 27282
PO Box 220, White Oak NC 28399
Phone 910 876 7001
Email usriflecaliber30m1.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **9 September 2018** I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to:

David R. Johnson
The North Carolina State Bar
217 East Edenton Street
Raleigh NC 27601
djohnson@ncbar.gov

Philip A. Collins
Bailey & Dixon, LLP
PO Box 1351
Raleigh NC 27602
pcollins@bdixon.com

/s/Christopher W. Livingston
Christopher W. Livingston, Plaintiff Pro Se, NCBN 27282
PO Box 220, White Oak NC 28399
Phone 910 876 7001
Email usriflecaliber30m1.com