IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-5-D

| | | |
|---|---|---|
| CHRISTOPHER W. LIVINGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA STATE BAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On January 9, 2018, Christopher W. Livingston ("Livingston" or "plaintiff") filed a complaint against the North Carolina State Bar ("NCSB") and the 13th Judicial District Bar ("District Bar") alleging that annual District Bar dues, as authorized by North Carolina General Statute § 84-18.1, are unconstitutional [D.E. 1]. The NCSB is an agency of the State of North Carolina. See N.C. Gen. Stat. § 84-15. The District Bar is a subdivision of the NCSB. See id. § 84-18.1. On April 12, 2018, Livingston filed an amended complaint against NCSB, Lee Wilson Bettis Jr. ("Bettis"), Leanor Bailey Hodge ("Hodge"), and John Silverstein ("Silverstein") (collectively, "defendants") [D.E. 6].[1] Bettis is a member of the NCSB and was a witness in a disciplinary proceeding involving Livingston. Silverstein is a member of the NCSB and served as NCSB councilor and chair of the Grievance Committee in April 2015 in a state disciplinary action against Livingston. Hodge is deputy counsel with the NCSB's Office of Counsel and prosecuted disciplinary actions against Livingston. In his amended complaint, Livingston also alleged selective

---

[1] Livingston did not include District Bar in the caption of his amended complaint, voluntarily dismissing the District Bar as a defendant. See [D.E. 6].

prosecution due to defendants' failure to pursue attorney discipline proceedings against other attorneys. Id.

Livingston seeks relief under 42 U.S.C. § 1983 and the North Carolina Constitution. Id. On April 26, 2018, NCSB and District Bar moved to dismiss Livingston's amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 8] and filed a memorandum in support [D.E. 9]. On June 15, 2018, Livingston responded in opposition [D.E. 15]. On July 30, 2018, Bettis moved to dismiss Livingston's amended complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 20] and filed a memorandum in support [D.E. 21]. On August 15, 2018, Hodge and Silverstein moved to dismiss Livingston's amended complaint for lack of subject-matter jurisdiction and failure to state a claim [D.E. 26] and filed a memorandum in support [D.E. 27]. On September 9, 2018, Livingston responded in opposition to Bettis's motion [D.E. 32] and to Hodge's and Silverstein's motion [D.E. 33].

On November 28, 2018, Livingston moved for leave to file a second amended complaint [D.E. 35] and filed a memorandum in support [D.E. 36]. On December 19, 2018, defendants responded in opposition [D.E. 37, 38]. On January 7, 2019, Livingston replied [D.E. 39]. As explained below, the court grants defendants' motions to dismiss and denies as futile Livingston's motion to amend.

I.

Livingston resides in Bladen County, North Carolina. See [D.E. 6] ¶ 5; [D.E. 1] ¶ 18. In March 2004, Livingston, who was then a member of the North Carolina State Bar, began to represent clients against Capital Acquisitions and Management Company ("Camco"), a debt collector based in Rockford, Illinois. See [D.E. 6] ¶ 43. On March 12, 2004, Livingston filed suit against Camco

2

and its counsel in Wake County District Court in North Carolina. See id. ¶ 50. Camco removed the action to the United States District Court for the Eastern District of North Carolina. See id. ¶ 52.[2] Livingston applied for admission to the North Carolina Eastern District Bar but failed to "take the oath of office before a U.S. Magistrate Judge in open court before appearing in court." Id. ¶¶ 53–55. On September 8, 2004, Livingston appeared before the Honorable Terrence W. Boyle, who noted that Livingston had not yet been admitted to appear in the Eastern District of North Carolina. See id. ¶¶ 57–58. Livingston acknowledged that he had yet do so. See id. ¶ 58. Judge Boyle also questioned Livingston's motive in bringing suit against Camco. See id. ¶¶ 59–61.

After the hearing, Livingston moved to disqualify Judge Boyle. See id. ¶ 63. Livingston describes the tone and statements within the motion as "unprofessional and extremely regrettable." Id. ¶ 64. In December 2004, NCSB commenced a grievance investigation against Livingston, alleging that he had unauthorizedly practiced law and noting that Livingston's "motion to disqualify Judge Boyle was cause for professional discipline." Id. ¶ 70. Livingston alleges that NCSB initiated the disciplinary proceeding in retaliation for Livingston "[holding] debt collectors accountable for violating the law." Id. ¶ 72. Livingston also alleges that, in August 2006, the Disciplinary Hearing Commission ("DHC") heard oral arguments in Livingston's disciplinary proceeding and indicated that Livingston ought to prevail. See id. ¶¶ 90–91. In October 2007, DHC scheduled another hearing concerning Livingston's disciplinary proceeding. See id. ¶ 94. On January 3, 2008, DHC entered a final order of discipline that admonished Livingston for Livingston's unauthorized practice

---

[2] Around this time, Jesse L. Riddle ("Riddle"), a lawyer for Camco, filed suit against Livingston and his clients in the United States District Court for the District of Utah. See [D.E. 6] ¶¶ 56, 67; N.C. State Bar v. Livingston, 06 DHC 11 (Disciplinary Hr'g Comm'n Dec. 31, 2007), https://www.ncbar.gov/handlers/DisciplinaryOrderHandler.ashx?url=\06DHC11.pdf. Livingston prepared documents for his clients to file in Utah, even though Livingston was not admitted to practice law in the District of Utah. See [D.E. 6] ¶ 70.

3

of law in both the Eastern District of North Carolina and the District of Utah. See id. ¶ 102; Livingston, 6 DHC 11, at 5. Livingston then sued NCSB for malicious administrative prosecution and selective prosecution. Superior Court Judge Donald Stephens dismissed the complaint for failure to state a claim. [D.E. 6] ¶¶ 105–06; cf. Livingston v. Bakewell, 232 N.C. App. 337, 757 S.E.2d 525, 2014 WL 457905, at *1–2 (2014) (per curiam) (unpublished table decision). On February 4, 2014, the North Carolina Court of Appeals affirmed. See Livingston, 2014 WL 457905, at *6.

In February 2008, Philip Manger ("Manger") contacted Livingston about representing consumers in debt collection matters. See [D.E. 6] ¶ 247. Manger worked for the Credit Collections Defense Network ("CCDN"). See id. ¶ 249. Livingston accepted clients from CCDN and served as an "Associate Attorney" even after Livingston learned that CCDN engaged in the unauthorized practice of law. See id. ¶¶ 251, 254–56; N.C. State Bar v. Livingston, 809 S.E.2d 183, 186 (N.C. Ct. App. 2017), disc. review denied, 812 S.E.2d 853 (N.C. 2018). Eventually, Livingston terminated his agreement with CCDN, and he began to represent clients in matters against CCDN. See [D.E. 6] ¶¶ 257–64. Bettis represented CCDN in some of the matters. See id. ¶ 277. Livingston alleges that Bettis violated numerous rules of professional responsibility while representing CCDN. See, e.g., id. ¶¶ 278–90, 300–01, 315, 348. Over the course of several years, Livingston filed actions on behalf of multiple clients against CCDN, and Livingston and Bettis had repeated negative encounters. See, e.g., id. ¶¶ 274–451.

On April 10, 2015, NCSB filed a complaint against Livingston based on Livingston's conduct during the CCDN litigation. See id. ¶ 108. Following a four-day trial, DHC found that Livingston had violated numerous rules of professional conduct and suspended his license for five years. See id. ¶ 109; N.C. State Bar v. Livingston, 15 DHC 15 (Disciplinary Hr'g Comm'n July 8,

4

2016), https://www.ncbar.gov/handlers/DisciplinaryOrderHandler.ashx?url=\Livingston,%20Ch ristopher%20Order%20of%20Disc%2015DHC15.pdf. On December 19, 2017, the North Carolina Court of Appeals affirmed Livingston's suspension. See Livingston, 809 S.E.2d at 200.

Livingston contends that NCSB, Hodge (Deputy Counsel for NCSB), and Silverstein (Chair of NCSB's Grievance Committee) "instituted and maintained [the disciplinary] action primarily in retaliation for [Livingston's] success" in the prior disciplinary proceeding and for Livingston's "truthful criticisms of NCSB and Judge Boyle." [D.E. 6] ¶ 113. Livingston maintains that NCSB would have pursued disciplinary action against Bettis and other attorneys if not for NCSB's retaliatory motive. Id.

On January 9, 2018, Livingston filed a complaint against NCSB and the District Bar alleging that mandatory bar dues, as authorized by N.C. Gen. Stat. § 84-18.1, are unconstitutional both facially and as applied to Livingston. See [D.E. 1] 5. On April 12, 2018, Livingston amended his complaint, adding Hodge, Silverstein, and Bettis as defendants and removing the District Bar as a defendant [D.E. 6]. Livingston's amended complaint includes four claims: (1) a section 1983 claim against defendants for illegal taxation in violation of the Fifth and Fourteenth Amendments, (2) a section 1983 claim against defendants for selective prosecution in violation of the First and Fourteenth Amendments, (3) an illegal taxation claim in violation of the North Carolina Constitution, and (4) and a selective prosecution claim in violation of the North Carolina Constitution. See id. ¶¶ 453–56. Livingston seeks monetary damages, injunctive relief, and a declaration that N.C. Gen. Stat. § 84-18.1 is unconstitutional. Id.

On May 9, 2018, the Supreme Court of North Carolina denied discretionary review of Livingston's suspension. See N.C. State Bar v. Livingston, 812 S.E.2d 853, 853–54 (N.C. 2018).

II.

A.

Defendants move to dismiss Livingston's selective prosecution claim. See Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Livingston bears the burden of establishing that this court has subject-matter jurisdiction in this action. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." Id. (quotation omitted).

Generally, federal district courts have "no authority to review final judgments of a state court in judicial proceedings." D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); see Rooker v. Fid. Tr. Co., 263 U.S. 413, 415–16 (1923). The Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment

6

itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Feldman, 460 U.S. at 476; Thana v. Bd. of License Comm'rs for Charles Cty., 827 F.3d 314, 318–20 (4th Cir. 2016); Washington v. Wilmore, 407 F.3d 274, 279–80 (4th Cir. 2005). The Rooker-Feldman doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal. See Johnson, 512 U.S. at 1005–06. It "preserves federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279. The doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted).

Rooker-Feldman is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006); Thana, 827 F.3d at 318–20. It applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284; see Skinner v. Switzer, 562 U.S. 521, 531–33 (2011); Thana, 827 F.3d at 318–20. For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "reverse or modify the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quotation omitted); see Thana, 827 F.3d at 318–20. Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani v. Va. Dep't of Transp., 434 F.3d 712, 718 (4th Cir. 2006) (footnote omitted); see Thana, 827 F.3d at 318–20. "The Rooker-Feldman doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of

7

constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) (quotations omitted); see Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997). In addition, a party "may not escape the jurisdictional bar of Rooker-Feldman by merely refashioning its attack on the state court judgments as a [section] 1983 claim." Jordahl, 122 F.3d at 202.

Livingston's selective prosecution claim invites the court to review and reject the North Carolina state disciplinary proceedings. State disciplinary proceedings are judicial proceedings. See Feldman, 460 U.S. at 482 n.15; Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433–34 (1982); Konan v. Sengel, 239 F. App'x 780, 781 (4th Cir. 2007) (per curiam) (unpublished); Motley v. Va. State Bar, 403 F. Supp. 2d 468, 471–74 (E.D. Va. 2005), aff'd, 178 F. App'x 191 (4th Cir. 2006) (per curiam) (unpublished). Moreover, the court does not have subject-matter jurisdiction merely because Livingston raised his selective prosecution claim under section 1983. See Konan, 239 F. App'x at 781; Jordahl, 122 F.3d at 202; Czura v. Supreme Court of S.C., 813 F.2d 644, 646 (4th Cir. 1987); Scotchel v. Karlin, No. 2:17-CV-3353, 2018 WL 1512378, at *2–4 (S.D. W. Va. Mar. 26, 2018) (unpublished), appeal docketed sub nomen, Scotchel v. Rhodes, No. 18-2352 (4th Cir. Nov. 13, 2018); Motley, 403 F. Supp. 2d at 471–74; Allstate Ins. Co. v. W. Va. State Bar, 998 F. Supp. 690, 691–93 (S.D. W. Va. 1998). Livingston's selective prosecution claim is inextricably intertwined with the issues raised in the state court proceedings at trial and on appeal, and Livingston had to raise this challenge in the state disciplinary proceedings. See Feldman, 460 U.S. at 482 n.16; Konan, 239 F. App'x at 781; Czura, 813 F.2d at 646; Motley, 403 F. Supp. 2d at 471–74; cf. United States v. Armstrong, 517 U.S. 456, 464–68 (1996); Wayte v. United States, 470 U.S. 598, 607–10 (1985); United States v. Venable, 666 F.3d 893, 900–04 (4th Cir. 2012);

8

Fieger v. Thomas, 74 F.3d 740, 746–50 (6th Cir. 1996); Majebe v. N.C. Bd. of Med. Exam'rs, 106 N.C. App. 253, 260, 416 S.E.2d 404, 407–08 (1992). Accordingly, the court grants defendants' motions to dismiss Livingston's section 1983 selective prosecution claim.[3]

B.

Defendants move to dismiss Livingston's illegal taxation claim concerning the annual District Bar dues. See Fed. R. Civ. P. 12(b)(1). Under the Tax Injunction Act, a district court lacks jurisdiction over any action that would "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; see Gwozdz v. HealthPort Techs., LLC, 846 F.3d 738, 742 (4th Cir. 2017). Congress designed the Tax Injunction Act "expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." Hibbs v. Winn, 542 U.S. 88, 104 (2004) (quotation omitted). Whether the court has jurisdiction over Livingston's challenge to the annual District Bar dues imposed under N.C. Gen. Stat. § 84-18.1 depends on whether the annual District Bar dues constitute a "tax."

Notably, this court held that a $50 surcharge that the North Carolina General Assembly assessed against every active member of the NCSB to help pay for public financing of judicial candidates is a "tax" under the Tax Injunction Act. See Jackson v. Leake, 476 F. Supp. 2d 515, 521–22 (E.D.N.C. 2006), aff'd, 524 F.3d 427 (4th Cir. 2008); cf. N.C. Gen. Stat. § 84-34. Moreover, the nomenclature describing the annual District Bar dues as an "annual membership fee," N.C. Gen. Stat. § 84-18.1(b), does not control whether the annual District Bar dues constitute a tax or a fee

---

[3] The court does not address the issue of abstention. See Younger v. Harris, 401 U.S. 37, 43–44 (1971). The court also does not address the issue of qualified immunity. See, e.g., Kisela v. Hughes, 138 S. Ct. 1148, 1152–54 (2018) (per curiam); Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589–93 (2018).

9

under the Tax Injunction Act. See GenOn Mid-Atl., LLC v. Montgomery Cty., 650 F.3d 1021, 1023 (4th Cir. 2011); Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000). Having examined the entity that imposes the annual District Bar dues, the population that is subject to the annual District Bar dues, and the purposes served by the use of the monies obtained by the annual District Bar dues, the court holds that the annual District Bar dues authorized by N.C. Gen. Stat. § 84-18.1 constitute a "tax" under the Tax Injunction Act. See Jackson, 476 F. Supp. 2d at 521–22; see also Valero Terrestrial Corp., 205 F.3d at 134–36; cf. N.C. Gen. Stat. §§ 84-15–84-38. Thus, the court lacks subject-matter jurisdiction to review Livingston's section 1983 claim attacking the annual District Bar dues.

Alternatively, even if the Tax Injunction Act does not apply to Livingston's challenge to the annual District Bar dues, the court lacks jurisdiction to review Livingston's claim based on the principle of comity, which reaches more broadly than the Tax Injunction Act. See Levin v. Commerce Energy, Inc., 560 U.S. 413, 424 (2010); Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 116 (1981) ("[T]axpayers are barred by the principle of comity from asserting [section] 1983 actions against the validity of state tax systems in federal courts."); Gwozdz, 846 F.3d at 743. Accordingly, the court grants defendants' motions to dismiss Livingston's section 1983 challenge to the annual District Bar dues.

C.

As for Livingston's state law claims, a district court "may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court has dismissed Livingston's claims over which the court has original jurisdiction. To the extent that Livingston raises state law claims, including claims under the North Carolina Constitution, the court declines to exercise supplemental jurisdiction over such

10

claims. Id.; see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Accordingly, the court dismisses without prejudice Livingston's state law claims.

III.

As for Livingston's motion for leave to file a second amended complaint, a plaintiff may amend his complaint once as a matter of course within 21 days after service or, if it is a pleading requiring a response, within 21 days after service of the response or service of a motion under Rule 12(b), (e), or (f). See Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend his pleading only with the written consent of the opposing party or by leave of court. See Fed. R. Civ. P. 15(a)(2). Although the court "should freely give leave when justice so requires," id., the court need not grant a plaintiff leave to amend when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the [plaintiff], or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc) (quotation omitted); see Foman v. Davis, 371 U.S. 178, 182 (1962); Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999); Sarvis v. United States, No. 7:11-CR-83-D, 2018 WL 4855206, at *2 (E.D.N.C. Oct. 5, 2018) (unpublished); Johnson v. Allen, No. 7:18-CV-14-D, 2018 WL 4289456, at *7 (E.D.N.C. Sept. 7, 2018) (unpublished). "An amendment is futile if the amended complaint would fail to state a claim upon which relief can be granted." Johnson, 2018 WL 4289456, at *7; see Van Leer v. Deutsche Bank Sec., Inc., 479 F. App'x 475, 479 (4th Cir. 2012) (unpublished); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

11

Livingston seeks leave to amend his complaint primarily to reinstate the District Bar as a defendant, to add clarifying comments to his allegations,[4] to allege that Bettis testified falsely against Livingston in the 2015 disciplinary hearing, and to discuss Livingston's academic success at Fayetteville State University. Compare [D.E. 6], with [D.E. 35-1]. Livingston's proposed second amended complaint is 72 pages long and contains 473 paragraphs, while Livingston's first amended complaint is 68 pages long and contains 456 paragraphs. Id.

Livingston's proposed amendment does not "nudge[] [his] claims," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), beyond the realm of "mere possibility" into "plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, Livingston's new allegations fail to establish that this court has subject-matter jurisdiction. Merely adding allegations to a complaint does not, by itself, make a claim plausible. For example, Livingston's new allegations concerning Bettis's alleged false testimony do not make Livingston's selective prosecution claim plausible or establish that this court has subject-matter jurisdiction over Livingston's claims attacking the annual District Bar dues. See [D.E. 35-1] ¶¶ 454–69. Livingston's vague and conclusory allegations would not survive a motion to dismiss. See Johnson, 2018 WL 4289456, at *7–9. Thus, Livingston's proposed amendment is futile, and the court denies Livingston's motion to amend.

IV.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 8, 20, 26], DENIES Livingston's motion for leave to file an amended complaint [D.E. 35], and DISMISSES without

---

[4] For example, in paragraph 11, Livingston's first amended complaint states: "A condition of Plaintiff's restoration to state practice is payment of all accrued Bar dues." [D.E. 6] ¶ 11. Livingston's second amended complaint amends the statement as follows: "A condition of Plaintiff's restoration to state practice is payment of all accrued Bar dues, conferring standing upon Plaintiff to contest the constitutionality of such dues." [D.E. 35-1] ¶ 11.

12

prejudice the federal claims. The court DECLINES to exercise supplemental jurisdiction over Livingston's state law claims and DISMISSES those claims without prejudice. The clerk shall close the case.

SO ORDERED. This _4_ day of February 2019.

                                                JAMES C. DEVER III
                                                United States District Judge